NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| WILHELM REUSS GmbH & Co KG, LEBENSMITTEL WERK, KRUGER NORTH AMERICA, INC., and GAEDE & GLAUERDT ASSECURADEUR GmbH & CO. KG, <br><br>Plaintiffs, <br><br>v. <br><br>EAST COAST WAREHOUSE & DISTRIBUTION CORP., <br><br>Defendant. | Civil Action No. 16-4370 (ES) (MAH) <br><br><br>OPINION |

**HAMMER, United States Magistrate Judge**

I. Introduction

This matter comes before the Court on the Defendant, East Coast Warehouse and Distribution Corp.'s ("East Coast Warehouse") motion for leave to file a Third-Party Complaint against Aldi, Inc. ("Aldi") [D.E. 50]. The Court has considered the motion, opposition, reply, and applicable law.[1] Pursuant to Federal Rule of Civil Procedure 78, the Undersigned did not

---

[1] In response to East Coast Warehouse's motion to implead Aldi, Plaintiffs filed a motion to strike Defendant's Third-Party Complaint against Aldi [D.E. 54] and a motion to Dismiss Defendant's Third-Party Complaint against Aldi [D.E. 55]. It appears that Plaintiffs intended these filings to be their opposition to the motion to implead Aldi, because Plaintiffs did not file any other opposition papers, and because the Court cannot consider dismissing or striking a Third-Party Complaint that has yet to be filed. Accordingly, the Court considers Plaintiffs' motion to strike and to dismiss as opposition to the motion to implead, and will terminate those motions.

hear oral argument and has considered this matter on the papers. For the reasons below, the Court will deny Defendant's motion.

## II. Background

This litigation arises out of alleged damage caused to jars of hazelnut spread (the "Cargo") produced by Plaintiff, Wilhelm Reuss GmbH & Co KG, Lebensmittel Werk ("Wilhelm"), and shipped from Hamburg, Germany to East Coast Warehouse's facility. See Complaint, D.E. 1, at ¶ 1. Plaintiff Wilhelm is a manufacturer of chocolate hazelnut spreads, chocolate fillings and desserts, and produced the Cargo in question. Id. at ¶ 3. Wilhelm's customers included Kruger North America, Inc. ("Kruger"). In October 2013, Kruger hired Defendant East Coast Warehouse to store the Cargo being shipped from Germany in a warehouse located in Elizabeth, New Jersey. Id. at ¶ 11.

Plaintiffs allege that the Cargo was "in good order and condition" when it was shipped from Germany. Id. at ¶ 13. However, Plaintiffs contend that the Cargo became infested with mice while being stored in East Coast Warehouse's facility, rendering the Cargo "unfit for human consumption." Id. at ¶ 15. Plaintiffs Wilhelm, Kruger, and Gaede & Glauerdt Assecuradeur GmbH & Co. KG ("Gaede") brought this action against East Coast Warehouse, alleging breach of a bailment contract and damages sustained to the Cargo. See generally, Complaint, D.E. 1.

East Coast Warehouse now seeks to file a Third-Party Complaint against Aldi for their alleged destruction of the Cargo in its possession. See Proposed Third-Party Complaint, D.E. 50-2. In the proposed Third-Party Complaint, East Coast Warehouse alleges that Aldi entered into an agreement with Kruger and/or Wilhelm to purchase a portion of the Cargo for resale. Id. at ¶ 9. From September to December, 2014, 465,192 jars of the Cargo were shipped from the

East Coast Warehouse facility to twelve different warehouses that Aldi owns throughout the United States. Id. at ¶ 10. According to the proposed Third-Party Complaint, "[o]n or about January 12, 2015, Kruger informed [East Coast Warehouse] that Aldi reported alleged contamination on some part of the Cargo." Id. at ¶ 11. After reporting the alleged contamination, East Coast Warehouse claims that Aldi and Kruger discussed the Cargo, East Coast Warehouse's involvement, and "Plaintiffs' actual and/or potential claim" against East Coast Warehouse. Id. at ¶ 12. East Coast Warehouse alleges that, despite having "actual and/or constructive knowledge" of an actual or potential dispute between Plaintiffs and East Coast Warehouse, "on or about January 22, 2015, Aldi destroyed or arranged for the destruction of all 177,629 jars of the Cargo in its possession. . ." Id. at ¶ 19. East Coast Warehouse's Proposed Third-Party Complaint contains one count for "negligent destruction of evidence." Id. at ¶¶ 21-28.

### III. Discussion

Federal Rule of Civil Procedure 14(a) governs motions for leave to file third-party complaints. Rule 14(a)(1) states that:

> A defending party may, as third-party plaintiff, serve a summons and complaint to a nonparty who is or may be liable to it for all or part of the claim against it. But the third-party plaintiff must, by motion, obtain the court's leave if it files the third-party complaint more than 14 days after serving its original answer.

Here, East Coast Warehouse filed its Answer on October 27, 2016 [D.E. 21] and filed this motion on August 22, 2017 [D.E. 50], and therefore past the 14 day deadline.

The decision to grant leave to file a third-party complaint is left with the sound discretion of the court. See Somportex Ltd. v. Philadelphia Chewing Gum Corp., 453 F. 2d 435, 439 (3d Cir. 1971), cert. denied, 405 U.S. 1017 (1972). However, "[a] third-party claim may be asserted under Rule 14(a) only when the third-party's liability is in some way dependent on the outcome

of the main claim or when the third-party is secondarily liable to defendant." F.D.I.C. v. Bathgate, 27 F. 3d 850, 873 (3d Cir. 1994). While a third-party claim does not need to be based on the same theory as the main claim, third-party claims must be brought under some theory of secondary liability such as indemnification, contribution, or some other theory of derivative liability recognized by relevant substantive law. See Toberman v. Copas, 800 F. Supp. 1239, 1242 (M.D. Pa. 1992). Accordingly, "[c]ourts have stringently followed the rule that a third-party complaint may not set forth a claim of the third party defendant's liability to the plaintiff" and it is clear that a "theory that another party is the correct defendant is not appropriate for a third party complaint." Slater v. Skyhawk Transportation, Inc., 187 F.R.D. 185, 203 (D.N.J. 1999) (quoting Toberman at 1242). "A third-party complaint that does not make a facial showing of secondary liability will not be entertained by the court." Ronson v. Talesnick, 33 F. Supp. 2d 347, 358 (D.N.J. 1999) (superseded on other grounds by statute). Importantly, a Third-Party Complaint is only proper under R. 14(a) when a right to relief exists under substantive law.

East Coast Warehouse asserts a claim of "negligent destruction of evidence" against Aldi because Aldi "knew or should have known Plaintiffs had an actual and/or potential legal claim against [East Coast Warehouse]." Proposed Third-Party Complaint, D.E. 50-2, at ¶ 22. Therefore, this Court first must consider whether New Jersey law recognizes a right to relief for negligent destruction of evidence, also known as negligent spoliation, by a third party. East Coast Warehouse argues that "[u]nder New Jersey law, a 'defendant who has been deprived of the ability to defend an action brought by a plaintiff because a third party has destroyed evidence' has a cause of action for damages against the third party." Movant's Brief, D.E. 50-1, at 8 (citing Hewitt v. Allen Canning Co., 321 N.J. Super. 178, 184 (App. Div. 1999)). East Coast Warehouse contends that if it is somehow found liable to Plaintiffs, it "likely can establish that

Aldi negligently destroyed materially necessary evidence which negatively impacted [East Coast Warehouse's] ability to defend itself against Plaintiffs' claims." Movant's Br., D.E. 50-1, at 8. East Coast Warehouse states that Aldi was "keenly aware of an actual and/or potential dispute between Plaintiffs and [East Coast Warehouse]," pointing to the fact that Aldi first notified Kruger of the alleged contamination, then discussed East Coast Warehouse's involvement with Kruger, and finally, sent an inspector to East Coast Warehouse's facility in Elizabeth to take pictures. Id. at 9. East Coast Warehouse argues that Aldi's destruction of a portion of the Cargo "handcuffs" East Coast Warehouse's defense because it is "unware of the scope, size or extent of the alleged damage to the Cargo Aldi destroyed." Id. Accordingly, East Coast Warehouse argues that it is entitled to implead Aldi because it may have a claim of spoliation against Aldi and is entitled to seek damages from Aldi, should East Coast Warehouse be found liable for the Cargo that Aldi negligently destroyed. Id. at 9-10.

Plaintiffs argue that East Coast Warehouse has not plead a viable claim. Plaintiffs contend that New Jersey law does not recognize a cause of action for negligent destruction of evidence. According to Plaintiff, New Jersey law recognizes only a claim for fraudulent concealment of evidence.

"[T]he existence of an affirmative cause of action for spoliation of evidence is a matter of state law" and "must be guided by the decisions of New Jersey's highest court." Gares v. Willingboro Township, 90 F. 3d 720, 725 (3d Cir. 1996). The New Jersey Supreme Court has not formally recognized the tort of negligent spoliation. Some decisions within this district have declined to recognize the tort of negligent spoliation of evidence, particularly as against a third party, because New Jersey appellate-level courts have not recognized it. Saksa-Mydlowski v. Ford Motor Co., Civ. No. 02-2950 (AET), 2006 WL 931611 (D.N.J. Apr. 10, 2006) (in product-

liability action arising from vehicle rollover, dismissing defendant automobile manufacturer's claim against third-party insurer for negligent spoliation, and holding that "Ford cites no authority indicating that the New Jersey appellate courts or New Jersey Supreme Court would permit any tort defendant to bring a claim of negligent destruction of evidence against a third party."); Kolanovic v. Gida, 77 F. Supp. 2d 595, 606 (D.N.J. 1999) ("As the New Jersey Appellate Division has not yet recognized the tort of negligent spoliation of evidence, and because the New Jersey Supreme Court declined, even in dicta, to recognize the tort in Hewitt, this Court concludes that the New Jersey Supreme Court would not recognize the tort of negligent spoliation of evidence at this time.").

Some New Jersey courts have analyzed claims of negligent spoliation against third parties under traditional negligence principles instead of considering the negligent spoliation as a distinct tort. For example, in Gilleski v. Community Medical Center, 336 N.J. Super. 646 (App. Div. 2001), Appellate Division held that the defendant had no duty to preserve the evidence. In that case, the plaintiff was injured while accompanying her young niece at a hospital to get x-rayed. At the hospital, the plaintiff's chair collapsed beneath her, causing plaintiff to fall and injure her back. Id. at 649. The hospital kept the chair for three or four weeks before discarding it. Id. The plaintiff later brought a claim against the hospital for negligent spoliation of evidence based on the disposal of the chair. Id. at 650.

The court in Gilleski concluded that the hospital had no duty to preserve the chair. The court determined that such a duty did not arise from "mere constructive notice of a potential third-party action based solely on the happening of an injury[.]" Id. at 655. Instead, the court found that the duty could arise only from "'an agreement to preserve, or a voluntary undertaking with reasonable and detrimental reliance, or a specific request[.]'"

Id. (quoting Johnson v. United Serv. Auto. Ass'n, 67 Cal. App. 4th 626, 637 (1998)). The court concluded that none of those circumstances existed: (i) there was no preservation request before disposal of the chair; and (ii) the hospital did not know of the lawsuit until long after it had disposed of the chair. Id.

The court in Egan v. Alco-Lite Indus., Civ. No. 09-4878 (WHW), 2011 WL 1205663 (D.N.J. March 29, 2011) applied similar reasoning. In Egan, the plaintiff was injured at work when the ladder he had climbed broke and plaintiff fell. After the fall, plaintiff placed an "'out of service' sign on the ladder" and moved it to his employer's office. Id. at *1. Plaintiff's employer took photographs of the ladder and stored those photos on its computer, in anticipation of providing them to plaintiff's counsel, as part of a workers-compensation claim. However, the employer disposed of the ladder, even though it was "aware of the possibility of litigation[.]" Id.

After the plaintiff sued the designer and manufacturer of the ladder, the defendants filed a third-party claim against the employer for negligent spoliation. Id. at *3-4. The court dismissed claim, finding that the pleading did not allege any sort of voluntary undertaking or assumption of duty by the employer, nor that defendants had requested that the employer preserve the ladder. Id. at *4.

In contrast, the alleged spoliator in Callahan v. Stanley Works, 306 N.J. Super. 488 (N.J. Super. Law Div. 1997) did undertake such an obligation, and the trial court allowed the negligent spoliation claim to proceed. The plaintiff was a Home Depot employee operating a forklift to move a pallet of doors packaged and shipped by Stanley Corporation. While the plaintiff was moving the pallet, it and the doors on it fell on the plaintiff. The plaintiff brought suit against Stanley Corporation, claiming that Stanley Corporation negligently packaged the doors and created an unsafe condition. Home Depot's loss-

prevention supervisor placed an evidence tag on the pallet, and Home Depot took custody of the pallet to allow its inspection.  Further, Home Depot also placed a worker's compensation lien on the employee's claim against Stanley Corporation.  However, Home Depot later lost or destroyed the pallet, before resolution of plaintiff's claim against Stanley Corporation.  The trial court concluded that by tagging and storing the pallet in anticipation of the workers compensation claim, Home Depot assumed the duty to preserve the pallet. The court also concluded that by placing the lien, Home Depot manifested a recognition that a third-party action had been or would be initiated.

The foregoing caselaw instructs that under New Jersey law, if a negligent spoliation claim against a third party exists at all, it requires a duty to preserve beyond "mere constructive notice of a potential third-party action based solely on the happening of an injury."  Gilleski, 336 N.J. Super. at 655.  East Coast Warehouse has not plead any facts sufficient to show that Aldi had such a duty to preserve the Cargo.  There is no suggestion in East Coast Warehouse's Proposed Third-Party Complaint that when Aldi took possession of the Cargo, it agreed to preserve the Cargo for an indefinite time.  To the contrary, Aldi took possession of the cargo as a routine customer, unaware of the infestation issue.  Plaintiff pleads no facts sufficient to allege that after Aldi became aware of the infestation issue, it voluntarily assumed a preservation duty.[2] Unlike the defendant in Callahan, for example, East Coast Warehouse does not allege that voluntarily took it upon themselves to preserve the Cargo at East Coast Warehouse's behest.  In

---

[2] The proposed Third-Party Complaint simply states that "Aldi knew or should have known Plaintiffs had an actual and/or potential legal claim against [East Coast Warehouse]." D.E. 50-2 at ¶ 22.  The Gilleski court squarely rejected that position, and made clear that constructive notice by itself is insufficient to impose a preservation duty on a third party.  See Gilleski, 336 N.J. Super. at 655.

fact, there is no allegation that East Coast Warehouse specifically asked Aldi to preserve the Cargo for possible litigation purposes. In sum, there is no contract, statute, or special circumstance alleged that would give rise to any duty by Aldi in this situation.

## IV.     Conclusion

East Coast Warehouse has not plead facts sufficient to show a plausible claim for negligent destruction of evidence. For the reasons stated herein, East Coast Warehouse's motion for leave to file a Third-Party Complaint against Aldi is denied. An appropriate order will accompany this opinion.

<u>**Michael A. Hammer**</u>
**UNITED STATES MAGISTRATE JUDGE**

Dated: December 6, 2017