**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____
                                                    :
**WILHELM REUSS GmbH & Co KG,**       :
**LEBENSMITTEL WERK, KRUGER**         :
**NORTH AMERICA, INC., and**              :
**GAEDE & GLAUERDT**                        :
**ASSECURADEUR GmbH & CO. KG,**      :
                                                    :     **Civil Action No. 16-4370 (ES) (MAH)**
        **Plaintiffs,**                             :
                                                    :
        **v.**                                       :
                                                    :
**EAST COAST WAREHOUSE &**            :
**DISTRIBUTION CORP.,**                     :                **OPINION**
                                                    :
        **Defendant.**                            :
_____:

### I.      Introduction

This matter comes before the Court on the motion of Plaintiffs, Wilhelm Reuss GmbH &

Co. KG, Lebensmittelwerk ("Wilhelm"), Kruger North America, Inc., ("Kruger"), and Gaede &

Glauerdt Assecuradeur GmbH & Co. Kg. ("Gaede"), for leave to file an Amended Complaint

[D.E. 60] to: (1) add Donald Dudley, Director of Business Operations for the existing Defendant,

East Coast Warehouse, as a defendant; and (2) add claims under the New Jersey Consumer Fraud

Act ("NJCFA"), N.J.S.A. §56:8-1 *et seq.*, and for fraud in the inducement against Dudley and

East Coast Warehouse.  The Court has considered the motion, opposition, reply, and applicable

law.  Pursuant to Federal Rule of Civil Procedure 78, the Undersigned has considered this matter

on the papers.  For the reasons set forth below, the Court will grant leave to add Dudley as a

defendant, and to allow Kruger to assert a claim of fraud in the inducement.  The Court will

otherwise deny the motion to amend.

## II.	Background

Wilhelm manufactures chocolate hazelnut spreads, chocolate fillings, and desserts. Complaint, D.E. 1 at ¶ 3. Wilhelm's customers include Kruger. In October 2013, Kruger hired East Coast Warehouse to store jars of hazelnut spread (the "Cargo") being shipped from Germany in a warehouse located in Elizabeth, New Jersey. *Id.* ¶ 11. Gaede insured the Cargo for "transit-related loss and damage." *Id.* at ¶ 6. This litigation arises out of alleged damage caused to the Cargo.

Plaintiffs allege that the Cargo was in good condition when Wilhelm shipped it from Germany. *Id.* at ¶ 13. Plaintiffs contend that the Cargo became infested with rodents while it was stored at East Coast Warehouse's facility, rendering the Cargo "unfit for human consumption." *Id.* at ¶ 15. Plaintiffs brought this action against East Coast Warehouse, alleging breach of a bailment contract and damages sustained to the Cargo.

Plaintiffs now seek leave to file an Amended Complaint to join Dudley and John Does as Defendants, and to assert causes of action for violations of the NJCFA and for fraud in the inducement. *See generally* Proposed Amended Complaint, D.E. 63-4. Specifically, Plaintiffs' Proposed Amended Complaint alleges that Dudley, as East Coast Warehouse's Director of Business Operations, along with East Coast Warehouse's officers and employees, "intentionally represented to Kruger that East Coast Warehouse carried standard Warehouse Legal Liability Insurance . . . covering Wilhelm/Kruger's products if anything happens to them while resident in [East Coast Warehouse's] warehouse, caused by [East Coast Warehouse's] lack of reasonable care." *Id*. at ¶¶ 12, 14, 52 (internal quotations omitted). Plaintiffs contend that Kruger, in evaluating whether to continue to use East Coast Warehouse's facilities, asked Dudley the nature

and extent of East Coast Warehouse's insurance coverage for its warehouse services. *Id*. at ¶ 19.
According to Plaintiffs, Dudley informed Kruger that East Coast Warehouse carried standard
Warehouse Legal Liability Insurance. Plaintiffs also allege that Dudley represented that the
insurance covered any issues with products that were stored in the warehouse and caused by East
Coast Warehouse's "lack of reasonable care." *Id*. at ¶ 20. Plaintiffs state that Kruger relied on
this representation and therefore decided to continue to store its products with East Coast
Warehouse. *Id*. at ¶ 21. Plaintiffs further allege, however, that after East Coast Warehouse's
insurer, Allianz Global Corporate & Specialty ("Allianz"), investigated the rodent infestation, it
declined coverage for the loss of the Cargo. The proffered basis for the declination was that East
Coast Warehouse's insurance policy did not cover losses caused by rodent infestation, regardless
of whether the infestation was caused by East Coast Warehouse's failure to exercise reasonable
care. *Id*. at ¶ 35. As a result of the infested cargo, and declination of insurance coverage,
Plaintiffs allege that they have sustained damages totaling $495,460.80. *Id*. at ¶ 36.

## III. Analysis

The first issue the Court must determine is whether Federal Rule of Civil Procedure 15 or
Rule 16 governs the motion to amend. *Karlo v. Pittsburgh Glass Works, LLC*, No. 10-1283,
2011 WL 5170445, at *2 (W.D. Pa. Oct. 31, 2011). Rule 15 states, in pertinent part, "a party may
amend its pleading only with the opposing party's written consent or the court's leave. The court
should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). "Rule 16, on the
other hand, requires a party to demonstrate 'good cause' prior to the Court amending its
scheduling order." *Karlo,* 2011 WL 5170445, at *2 (citing Fed. R. Civ. P. 16(b)(4)). In this
case, the Court issued an Amended Scheduling Order on July 20, [D.E. 23], which gave the
parties until November 15, 2017 to add new parties or amend pleadings. Plaintiffs filed this

motion for leave to amend their complaint on November 15, 2017, within the time allowed by the operative scheduling order. Therefore, Rule 15 governs the instant motion.

Under Rule 15, a party may amend the complaint once as of right, and "courts may grant subsequent amendments 'when justice so requires.'" *Fraser v. Nationwide Mut. Ins. Co.,* 352 F.3d 107, 116 (3d Cir. 2003) (quoting Fed. R. Civ. P. 15(a)). The Court may deny leave to amend the pleadings only where there is (1) undue delay, (2) bad faith or dilatory motive, (3) undue prejudice, (4) repeated failures to cure deficiencies, or (5) futility of amendment. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Long v. Wilson,* 393 F.3d 390, 400 (3d Cir. 2004) ("We have held that motions to amend pleadings [under Rule 15(a)] should be liberally granted.") (citations omitted); *Grayson v. Mayview State Hosp.,* 293 F.3d 103, 108 (3d Cir. 2002). Here, East Coast Warehouse argues that Plaintiffs' claim under the NJCFA is futile because Kruger is not a consumer under the NJCFA, nor was the purchase of East Coast Warehouse's storage services a transaction covered by the NJCFA. Additionally, East Coast Warehouse argues that Plaintiffs' claim of fraud in the inducement is similarly futile because it is barred by the economic loss doctrine.

A court will consider an amendment futile if it "is frivolous or advances a claim or defense that is legally insufficient on its face." *Harrison Beverage Co. v. Dribeck Imps., Inc.,* 133 F.R.D. 463, 468 (D.N.J. 1990) (citations omitted) (internal quotations marks omitted). To determine whether an amendment is insufficient on its face, the Court employs the standard applied to Rule 12(b)(6) motions to dismiss. *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1434 (3d Cir. 1997). Under this standard, the question before the Court is not whether the movant will ultimately prevail, but whether the complaint sets forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570

(2007); *Hishon v. King & Spalding,* 467 U.S. 69, 73 (1984) (establishing that a "court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations"); *Harrison Beverage,* 133 F.R.D. at 468 ("'Futility' of amendment is shown when the claim or defense is not accompanied by a showing of plausibility sufficient to present a triable issue."). A two-part analysis determines whether this standard is met. *Fowler v. UPMC Shadyside,* 578 F.3d 203, 210 (3d Cir. 2009) (citing *Ashcroft v. Iqbal,* 556 U.S. 662, 629 (2009)).

First, a court separates the factual and legal elements of a claim. *Fowler,* 578 F.3d at 210. All well-pleaded facts set forth in the pleading and the contents of the documents incorporated therein must be accepted as true, but the Court may disregard legal conclusions. *Id.* at 210–11; *West Penn Allegheny Health Sys., Inc. v. UPMC*, 627 F.3d 85, 97 n.6 (3d Cir. 2010); *see also Iqbal*, 556 U.S. at 678 (noting that a complaint is insufficient if it offers "labels and conclusions," a "formulaic recitation of the elements of a cause of action," or "naked assertions" devoid of "further factual enhancement") (alterations omitted) (internal quotations marks omitted).

Second, as stated above, a court determines whether the plaintiff's facts are sufficient "to state a claim to relief that is plausible on its face." *Twombly,* 550 U.S. at 570. As the Supreme Court instructed in *Iqbal*, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." 556 U.S. at 678. The plausibility standard is not a "probability requirement," but the well-pleaded facts must do more than demonstrate that the conduct is "merely consistent" with liability so as to "permit the court to infer more than the mere possibility of misconduct." *Id.* at 678–79 (citations omitted) (internal quotation marks omitted). This "context-specific task ... requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

As an initial matter, the Court notes that although Plaintiffs collectively filed this motion to include additional claims under the NJCFA and for fraud in the inducement, the proposed claims are limited to Kruger. The Proposed Amended Complaint alleges that East Coast Warehouse made the representations regarding the scope of insurance coverage solely to Kruger. The new claims in the Proposed Amended Complaint are silent as to Wilhelm or Gaede. Additionally, neither the Proposed Amended Complaint nor motion papers in support of amendment argue that Wilhelm or Gaede are entitled to recover based on an assignment, contract, or agency principles. Therefore, the Court considers the application to add claims under the NJCFA and for fraudulent inducement solely as to Kruger.

The Court next considers whether the Proposed Amended Complaint sufficiently states a claim by Kruger of violations of the NJCFA and for fraud in the inducement.

### a. NJCFA

East Coast Warehouse argues that Kruger does not have standing under the NJCFA, and even if it did, the Proposed Amended Complaint does not plead a *prima facie* claim for fraud under the Act. The Court will take each argument in turn.

East Coast Warehouse argues that Kruger does not have standing to bring a claim under NJCFA because Kruger is not a "consumer" within the meaning of the NJCFA, nor are the services offered by East Coast Warehouse the type of services covered by the Act. Defts.' Opp'n Br. to Mot. to Amend, D.E. 64, at 11. To determine whether a plaintiff has standing under the NJCFA, the court must look at the character of the transaction. The NJCFA "seeks to protect consumers who purchase 'goods or services generally sold to the public at large.'" *Cetel v. Kirwan Fin. Group, Inc.,* 460 F.3d 494, 514 (3d Cir. 2006) (quoting *Marascio v. Campanella,* 298 N.J. Super. 491 (App. Div. 1997)). As the Third Circuit has explained, "the [NJCFA] is not intended to cover

every transaction that occurs in the marketplace, but, rather, its applicability is limited to consumer transactions which are defined both by the status of the parties and the nature of the transaction itself." *Id* (internal quotations omitted).

It is well established that one must be a "consumer" to have standing to sue under the statute. *See City Check Chasing, Inc. v. National State Bank,* 122 N.J. 389 (1990) (citing *Hundred East Credit Corp. v. Eric Schuster,* 212 N.J. Super. 350, 354-357 (App. Div. 1986), *certif. denied,* 107 N.J. 60 (1986)). The NJCFA does not define who, or what, qualifies as a consumer. However, courts have routinely held that a business entity can qualify as a consumer under the NJCFA. *See J&R Ice Cream Corp. v. California Smoothie Licensing Corp.,* 31 F.3d 1259, 1273 (3d Cir. 1994) (citing New Jersey cases that hold that purchasers of yachts, tow trucks, computer peripherals, and prefabricated wall panels are all "consumers" under the NJCFA). Courts have applied the NJCFA to business entities "who purchase goods and services for use in their business operations." *Prescription Counter v. AmerisourceBergen Corp.,* No. 04-5802, 2007 U.S. Dist. LEXIS 84102, 2007 WL 3511301 at *44 (D.N.J. Nov. 14, 2007). To determine whether a business entity is acting as a consumer or acting as a business, courts have examined various factors, including whether

> (1) the purchased goods were resold at a profit; (2) the parties were 'experienced commercial entities of relatively equal bargaining power' and the plaintiff 'was not an unsophisticated buyer suffering a disparity of industry knowledge;' (3) the parties negotiated the relevant contracts; and (4) the plaintiff had taken steps to guard against the possibility of receiving fraudulent goods.

*Hatteras Press, Inc. v. Avanti Computer Sys.,* 2017 U.S. Dist. LEXIS 101732, 2017 WL 2838349 (D.N.J. June 30, 2017) (quoting *Papergraphics Int'l, Inc. v. Correa*, 389 N.J. Super. 8, 13-14 (App. Div. 2006)).

In *Papergraphics*, the New Jersey Superior Court, Appellate Division held that a plaintiff who purchased 9,714 printer ink cartridges from a buyer to resell at a profit was not a consumer

within the meaning of the NJCFA. 389 N.J. Super at 14. The court found that "although plaintiff purchased a common consumer product, plaintiff was not a 'consumer' under the [NJCFA]" because the quantity of goods, as well as the purpose of the purchase, indicated the transaction fell outside the purview of the NJCFA. The court also found that the parties were "experienced commercial entities of relatively equal bargaining power which engaged in negotiated contracts." The court noted that plaintiff was a sophisticated buyer and knew the potential risks of imitation products online, and in fact that plaintiff had taken steps to guard against the possibility of purchasing counterfeit goods by reviewing a sample ink cartridge.

Applying the foregoing standards, the Court concludes that the Proposed Amended Complaint does not sufficiently allege facts indicating that Kruger was acting as a consumer when contracting with East Coast Warehouse. The Proposed Amended Complaint alleges that Kruger "is a subsidiary of Wilhelm and imports and distributes Wilhelm's products in the U.S." Proposed Amended Complaint, D.E. 63-4, at ¶ 6. As an importer and distributor, Kruger was presumably well versed in storage services for products intended to distribution to third-party sellers, insofar as the shipment and distribution of Wilhelm's products from overseas plainly requires storage of those products. The Proposed Amended Complaint does not plead allegations sufficient to support a conclusion that Kruger suffered a disparity of industry knowledge. Nor does it allege any facts indicating that Kruger and East Coast Warehouse had unequal bargaining power while negotiating the Agreement.

Similar to *Papergraphics*, Kruger also took steps to protect its potential loss exposure by inquiring about the level of insurance coverage on the Cargo. Kruger specifically inquired about the nature and extent of East Coast Warehouse's insurance, indicating its awareness of warehouse industry practices and the possibility that the Cargo could be damaged while in storage. Further,

the Proposed Amended Complaint makes clear that the parties negotiated the initial Agreement, *see* ¶ 18, further indicating Kruger's status as a business and not a consumer. Additionally, the Court is not persuaded that storage services are somehow outside of Kruger's standard business operation. As stated above, Kruger's position as distributor of Wilhelm's products clearly indicates that storage is a routine component of Kruger's importation and distribution activities. Plaintiffs, therefore, have no plead facts sufficient to show that Kruger is a consumer within the meaning of the NJCFA. Having determined that Kruger lacks standing to state a claim under the NJCFA, the Court need not reach whether Kruger has plead a *prima facie* claim under the NJCFA.

### b. Fraud in the Inducement

Kruger also seeks to amend the Complaint to include a claim of fraud in the inducement based on East Coast Warehouse and Dudley's statements to Kruger regarding the nature and extent of East Coast Warehouse's insurance coverage. East Coast Warehouse, however, contends that the economic loss doctrine bars this claim. "The economic loss doctrine 'prohibits plaintiffs from recovering in tort economic losses to which their entitlement flows only from a contract." *Bracco Diagnostics, Inc. v. Bergen Brunswig Drug Co.,* 226 F. Supp. 2d 557, 562 (D.N.J. 2002) (quoting *Duquesne Light Co. v. Westinghouse Elec. Co.,* 66 F.3d 604, 618 (3d Cir. 1995). "[A] well-settled exception to the economic loss doctrine is fraud in the inducement of a contract[]" "'or an analogous situation based on pre-contractual misrepresentations.'" *Fischell v. Cordis Corp.,* 2016 U.S. Dist. LEXIS 131260, (D.N.J. Sep. 26, 2016) (quoting *Bracco Diagnostics*, 226 F. Supp. 2d at 563). In order to establish a claim for fraudulent inducement, the following elements must be shown: "(1) a material representation of a presently existing or past fact; (2) made with no knowledge of its falsity; and (3) with the intention that the other party rely thereon; (4) resulting

in reliance by that party; (5) to his detriment." *RNC Sys., Inc. v. Modern Tech Grp., Inc.,* 861 F. Supp. 2d 436, 451 (D.N.J. 2012).

When assessing whether the fraud in the inducement exception applies, courts "distinguish between claims intrinsic to the contract, which are barred by the doctrine, and claims extrinsic to the contract, which are not barred by the doctrine." *Ribble Co. v. Burkert Fluid Control Sys.,* 2016 U.S. Dist. LEXIS 161746 at * 8, (D.N.J. Nov. 22, 2016). Put another way, "courts will generally hold that '[f]raud claims can proceed alongside breach of contract claims where there exists fraud in the inducement of a contract or an analogous situation based on pre-contractual misrepresentations,' as opposed to an allegation of fraud in the performance of the contract." *Id.* (quoting *RNC Sys., Inc. v. Modern Tech Grp., Inc.,* 861 F. Supp. 2d 436, 451 (D.N.J. 2012). Therefore, a plaintiff must allege that the "underlying allegations involve misrepresentations unrelated to the performance of the contract, but rather precede the actual commencement of the agreement." *State Capital Title & Abstract Co. v. Pappas Bus. Servs., LLC*, 646 F. Supp. 2d 688, 676 (D.N.J. 2009).

Here, East Coast Warehouse argues that Kruger's claim for fraud in the inducement is related to the performance of the Agreement between the parties for the storage of the Cargo, and therefore is barred by the economic loss doctrine. Specifically, East Coast Warehouse contends that the email exchange in which Dudley made the alleged intentional misrepresentation between March 6-24, 2014, while the parties entered into the Agreement on September 10, 2013. As such, East Coast Warehouse argues that the so-called fraud is related to performance under the Agreement, not the formation of the Agreement because the Agreement was already in effect. Kruger, however, contends that these emails were exchanged during "what effectively

constituted contract renewal discussions" meaning the false representations were made pre-performance. *See* Reply Br., D.E. 67, at 21.

In *G&F Graphic Servs. V. Graphic Innovators, Inc.,* 18 F. Supp. 3d 583, (D.N.J. 2014), the court found that the fraud in the inducement exception to the economic loss doctrine applied where the alleged facts "supported an inference that [plaintiff] would not have contracted to purchase [a press] given its knowledge of the historical problems with that model, [] thereby supporting a conclusion that the alleged misrepresentation induced [plaintiff] to enter into a contract with [defendant]." *Id.* at 593. The court found that "such representations are necessarily 'extraneous to the contract' because they took place prior to the execution of the contract[.]" *Id.* (quoting *Bracco,* 226 F. Supp. 2d at 564). Here, the Proposed Amended Complaint explicitly alleges that Kruger "[in] evaluating whether to continue to store its/Wilhelm's goods at [East Coast Warehouse's] warehouse," specifically "asked Dudley to advise the nature and extent of the insurance [East Coast Warehouse] maintained relating to its provision of warehouse services." D.E. 63-4 at ¶ 19. Further, the Proposed Amended Complaint alleges that "[i]n reliance on that representation," Kruger chose to continue to store their products at East Coast Warehouse's facility. *Id.* at ¶ 21. Although it is not clear whether a new contract was formed following this decision by Kruger, the Proposed Amended Complaint clearly alleges that the misrepresentation occurred before Kruger's decision to continue to work with East Coast Warehouse. Additionally, East Coast Warehouse has not provided any case law showing that a claim of fraud in the inducement cannot be based on a decision to continue performance pursuant to an existing contract. Accordingly, this Court cannot conclude that the economic loss doctrine bars Kruger's claim for fraud in the inducement.

East Coast Warehouse also argues that the Proposed Amended Complaint fails to sufficiently plead the requisite scienter, intent, reliance or damages required for Kruger's fraud claim. The Court disagrees. The Proposed Amended Complaint sufficiently pleads each element of fraud in the inducement. Specifically, it alleges that East Coast Warehouse and Dudley intentionally misrepresented to Kruger that East Coast Warehouse carried standard liability insurance "intending to induce Kruger to continue to store Wilhelm/Kruger products and to store the Cargo in [East Coast Warehouse's] [w]arehouse." *See* D.E. 63-4 at ¶ 52. It further alleges that East Coast Warehouse, Dudley, and the John Does "knew and/or believed that [East Coast Warehouse] did not carry insurance covering damage to Wilhelm/Kruger's products, including the Cargo, caused by [East Coast Warehouse's] failure to exercise reasonable care in preventing rodent infestation of those products." *Id*. at ¶ 53. Plaintiffs allege that Kruger "reasonably relied upon [East Coast Warehouse's], Dudley's, and the John Does' misrepresentations concerning [East Coast Warehouse's] insurance coverage in deciding to continue to store Wilhelm/Kruger products and to store the Cargo at [East Coast Warehouse's] Warehouse." *Id* at ¶ 54. Kruger alleges that "as a direct and proximate cause of [East Coast Warehouse's] fraud in the inducement, Plaintiffs sustained damages . . . in the sum of $495,460.80." *Id.* at ¶ 55. It is clear, therefore, that the Proposed Amended Complaint contains sufficient allegations as to Kruger's claim of fraud in the inducement.

## IV. Conclusion

Based on the foregoing, Kruger's motion for leave to amend is granted insofar as it seeks to it add Dudley as a defendant and add Kruger's claim for fraud in the inducement. Kruger's motion for leave to amend is denied insofar as it seeks to add claims under the NJCFA. An appropriate order accompanies this opinion.

_s/ Michael A. Hammer_
**UNITED STATES MAGISTRATE JUDGE**


Dated: June 26, 2018